FLETCHER, Judge.
Fred Snowman seeks certiorari review of a decision of the Monroe County Circuit Court sitting in its appellate capacity, which decision affirmed the action of the Monroe County Contractor’s Examining Board [the Examining Board] taken against Snowman. Finding that Snowman was denied the essential requirements of the law, we grant certio-rari, quash the decision of the circuit court, and direct the circuit court to reverse the Examining Board’s action.
The Examining Board charged Snowman, a state-certified general contractor, with violating Monroe County Code provisions which required him to provide workers’ compensation insurance in order to undertake construction work, and which required him to comply with Florida statutes relating to qualifying business organizations and registering fictitious entities. Ultimately the Examining Board found Snowman guilty of these charges and suspended his permit-pulling privileges in Monroe County for a period of six months. Snowman appealed the Examining Board’s action to the Monroe County Circuit Court, contending that, as he held a general contractor’s license issued by the Florida Department of Business and Professional Regulation pursuant to chapter 489, Florida Statues (1995), not one issued by Monroe County, not only is he authorized to engage in contracting anywhere within the State of Florida (including Monroe County), but also only the state agency can discipline him. For this he relies on section 489.131(7)(f), Florida Statutes (1995):
“Nothing in this subsection shall be construed to allow local jurisdictions to exercise disciplinary authority over certified contractors.”
The Examining Board concurs that it has no disciplinary authority over Snowman, but contends that it has the “nondisciplinary” authority to deny the issuance of, or suspend, building permits pursuant to subsections 489.113(4)(b) and (e), Florida Statutes (1995):
“(b) Notwithstanding the provisions of paragraph (a), a local construction regulation board may deny the issuance of a building permit to a certified contractor, or issue a permit with specific conditions, if the local construction regulation board has found such contractor, through the public hearing process, to be guilty of fraud or a willful building code violation within the county or municipality that the local construction regulation board represents or if the local construction regulation board has proof that such contractor, through the public hearing process, has been found guilty in another county or municipality within the past 12 months, of fraud or a willful building code violation and finds, after providing notice of an opportunity to be heard to the contractor, that such fraud or violation would have been fraud or a violation if committed in the county or municipality that the local construction board represents. Notification of and information concerning such permit denial shall be submitted to the department -within 15 days after the local construction regulation board decides to deny the permit.
(c) The local government may also deny issuance of, or may suspend, any outstand *719 ing building permit where a contractor fails or refuses to provide proof of public liability and property damage insurance coverage as required by s.489.115(5) and workers’ compensation insurance coverage as required by s.489.114.” (emphasis supplied)
Snowman counters that although these subsections authorize a local construction regulation board to deny or suspend a permit under certain circumstances, the Examining Board is not a local construction regulation board, thus it is not so authorized.[1]
We agree with Snowman’s contention that subsections 489.113(4)(b) and (c) authorize only a local construction regulation board to deny or suspend a building permit and that the Examining Board is not such a board. First, although subsection 489.113(4)(b) specifically refers to a “local construction regulation board” whereas subsection 489.113(4)(e) refers to a “local government,” the language following the latter reference makes it clear that the subsection relates back to subsection (4)(b). We conclude therefore that a “local construction regulation board” is the local governmental entity intended to carry out section 489.113(4)(c) as well as (4)(b).
Second, the legislature has provided for a specific controlling definition in section 489.105(12) that a
“ ‘[l]oeal construction regulation board’ means a board, composed of not fewer than three residents of a county or municipality, which the governing body of that county or municipality may create and appoint to maintain the proper standard of construction of that county or municipality.” (emphasis supplied)
The Monroe County Code contains subsections 6-90(a) and (b), which provide the Examining Board’s powers:
“(a) The examining board shall have the power to determine if a license or certificate of competency of any local contractor should be suspended for any violation of this article and to fix the length of time for such suspension or to revoke the license or certificate under the provisions of this article, or to appoint an employee from the county commission to investigate any complaints made against the licensed contractor and determine whether it shall take administrative action against the contractor or direct the investigator to file a complaint for prosecution for the violation against the contractor; to call upon members of the industry to advise and assist them; to determine if the permit-pulling privileges of state certified contractors should be revoked, suspended or conditioned and to set the terms of suspension or conditions.
(b) When the board has reason to believe that any person not licensed by the board or building official has violated any provision of this chapter which relates to the practice of a profession regulated by this board or building department or any rule adopted pursuant thereto, the board or the building official may issue and deliver to such person a notice to cease and desist from such violation. In addition, the board may issue and deliver a notice of cease and desist to any person who aids and abets the unlicensed practice of a profession and/or contracts with such unlicensed person .... “ (emphasis supplied)
Notwithstanding that subsection (a) purports .to delegate the power to revoke, suspend or condition the “permit-pulling privileges of state certified contractors,” the Monroe County Commission cannot authorize such unless the examining board is a local construction regulation board as intended by section 489.113(4)(b), Florida Statutes. In that regard Monroe County has adopted the Standard Building Code, 1994 edition (with local amendments), to provide its regulations relating to construction. § 6-16, Monroe County Code. Monroe County has included within that adoption the establishment of the “Construction Board of Adjustment and Appeals” set out in the 1994 edition of the Standard Building Code, which Construction Board is empowered to hear appeals of the building official’s decisions and interpretations concerning the building code. § 6-16.4, Monroe County Code.
*720 The Standard Building Code is one of the several construction codes approved by the Florida Legislature for adoption by local governments. § 553.73(2), Fla. Stat. (1995). Its purpose is to provide construction standards which are to be enforced by the local agency established for that purpose. §§ 553.71(5), 553.73(1), Fla. Stat. (1995). It is thus the Monroe County Board of Adjustment and Appeals (and not the Examining Board) that is the local construction regulation board referred to in subsections 489.113(4)(b) and (4)(e), Florida Statutes.[2]
As a consequence of the foregoing, we hold that the Examining Board was without authority to deny or suspend Snowman’s permits. The writ of certiorari is issued, the circuit court decision affirming the Examining Board’s order is quashed, and the circuit court is directed to reverse the Examining Board’s order.
Certiorari granted.

. Snowman also contends that suspending all his permitting ability for six months is punishment (discipline) not authorized by the subsections. We do not reach this issue.

. We observe, not without a note of irony, that the Monroe County Board of Adjustment and Appeals includes within its ranks the members of the Monroe County Examining Board. § 6-16.4, Monroe County Code. However, the Board of Adjustment and Appeals includes additional members, thus the Boards are not simply alter egos of one another.